AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Alabama

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>RED I-PHONE MODEL: A1661; IC579C-E3087A<br>CURRENTLY LOCATED AT ATF FIELD OFFICE<br>PROPERTY ROOM (further described in Attachment A) | Case No. 2:19mj82-GMB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
RED I-PHONE MODEL: A1661; IC579C-E3087A CURRENTLY LOCATED AT ATF FIELD OFFICE PROPERTY ROOM (further described in Attachment A)

located in the _____ Middle _____ District of _____ Alabama _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922(g)(1) | Felon in possession of a firearm |
| 18 USC 924(c)(1) | Possession of a firearm during a drug trafficking crime |
| 21 USC 841(a)(1) | Possession with intent to distribute a controlled substance |

The application is based on these facts:
See attached Affidavit incorporated herein by reference and made part of this application.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Task Force Officer Antonio Goins, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 18, 2019

City and state:  Montgomery, AL

_____
*Judge's signature*

GRAY M. BORDEN, U.S. MAGISTRATE JUDGE
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN THE MATTER OF THE SEARCH OF
RED I- PHONE MODEL: A1661; IC 579C-
E3087A CURRENTLY LOCATED AT
MONTGOMERY ATF FIELD OFFICE
PROPERTY ROOM

Case No. _2: 19mj 82-GMB_

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Antonio Goins, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.        I make this affidavit in support of an application under Rule 41 of the
Federal Rules of Criminal Procedure for a search warrant authorizing the examination of
property—an electronic device—which is currently in law enforcement's possession, and the
extraction from that property of electronically stored information described in Attachment B.

2.        I, Antonio Goins, being duly sworn, depose and state that I am a Task
Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United
States Department of Justice, and have been so since March 25, 2016. I am currently assigned to
the Montgomery, Alabama Field Office. I have a Bachelor of Science degree in Criminal Justice
from Troy University and a Master's in Public Safety from Auburn University at Montgomery. I
am a graduate of the Montgomery Police Department Alabama Advanced Criminal Justice
Academy. I have been working in law enforcement for approximately six years, and in the
performance of my duties I have conducted investigations of violations of state and federal laws,
including drug trafficking, firearm crimes, white collar crimes and other violent as well as

nonviolent crimes. I am familiar with federal criminal laws relating to firearms and illegal controlled substances.

3.        This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4.        The property to be searched is a red I-Phone, model A1661 cellular telephone, IC 579C-E3087A, hereinafter the "Device." The Device is currently located in the ATF Montgomery, Alabama Field Office Property Vault under Barcode No. 2247967, Item No. 10.

5.        The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

6.        The information contained in this affidavit is based upon my own training and experience, my own knowledge, and information provided to me by other law enforcement officers and cooperating witnesses.

7.        The crimes under investigation are felon in possession of a firearm and ammunition that has travelled in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1); possession with the intent to distribute a controlled substance in violation of Title 21 United States Code, Section 841(a)(1); and possession of a firearm during a drug trafficking crime, in violation of Title 18, United States Code, Chapter 44, Section 924(c)(1).

2

## PROBABLE CAUSE

8.          On Friday, January 25, 2019, Montgomery Police Department Dispatcher received a phone call from a woman in a frantic state of mind. The woman advised the call taker that her ex-boyfriend, against whom she had a protection order in place, was following her on Buckingham Drive (Montgomery, Alabama). The woman also said that her ex -boyfriend was shooting at her while he was driving. She also advised that the male subject had hit her vehicle while they were driving. The woman stated that she was driving a white Dodge Charger and the male subject was driving a burgundy Dodge Challenger. During the call, the woman stated that her name was Shipp, Myra (b/f, dob: 11/10/1984). Shipp stated that her ex-boyfriend was Quintin PETEN (b/m, dob: 07/16/1985). Shipp advised PETEN was wearing a hunter green and black jacket with black pants.

9.          TFO Goins later listened to the audio recording of Shipp's 911 call and heard Shipp crying and repeatedly pleading for help from the police department. She said "please" over 10 times in the call. TFO Goins heard what appeared to be a gunshot, as had been described by Shipp in the 911 call.  In addition, TFO Goins could hear the victim's car being struck by another vehicle.

10.          On the same date and time as Shipp's frantic call to 911, Montgomery Police Department (MPD) Officers responded to an unrelated call for service at Marlowe Drive/Rainbow Road related to a domestic violence altercation. One of the responding officers, MPD Officer Ray, advised that while he was responding to the domestic disturbance call, he observed a white Dodge Charger and a red Dodge Challenger travelling on Rainbow Road at a high rate of speed. Officer Ray said that the vehicles turned on Leicester Drive, then he heard four (4) to five (5) gunshots. Officer Ray stated that he could see the flash from the gunshots,

3

which reflected off the front of the houses in the neighborhood. Officer Ray attempted to stop the red Dodge Challenger, but the vehicle refused to pull over.

11.      Another responding officer, MPD Officer Taylor, advised over the radio that he located the red Dodge Challenger wrecked at Coral Lane and Rainbow Road. Officer Taylor observed the vehicle smoking from the wreck. Officer Taylor looked inside the vehicle and noticed the vehicle was abandoned.

12.      MPD Sergeant (SGT) Caulfield advised that he observed a male wearing a green trench coat with a hood on his head at the intersection of Marlowe and Rainbow walking. SGT Caulfield said that as he turned his vehicle to find the person, the subject had fled the area. MPD LT Ferguson responded, and stated that as he drove the area of Wright Street and Rainbow Road attempting to locate the person, he observed a black firearm in the middle of the roadway. LT Ferguson advised that the firearm was warm and appeared to be fired.  LT Ferguson advised that the firearm was not loaded and did not have ammunition in the magazine.  The firearm found was further described as a Smith and Wesson model Bodyguard .380 caliber (s/n KCY1480).

13.      On this same date (January 25, 2019) MPD Officers Windham, Ruiz and Carey observed a person wearing dark green clothes with a camo trench coat. The Officers noted that the person was bleeding from his hands. The Officers advised that subject was on South Court Street and Southmont Drive. Officers made contact with PETEN, Quintin (b/m, dob: 07/16/1985) who advised that he was a victim of a robbery. Officers contacted the units on scene and were advised that PETEN was the suspect.

14.      On the same date, MPD Detective Jones made contact with Shipp, who stated that on Thursday, January 24, 2019, she was out with a friend at a restaurant when PETEN

4

showed up causing a verbal altercation. Shipp advised she left to go to another restaurant, at which PETEN again showed up causing a verbal altercation. Shipp said that she and her friend decided to leave but as they began to drive away in their cars, she noticed that PETEN was following them, so they attempted various unsuccessful evasive maneuvers, which prompted her friend to drive in a different direction. Shipp informed Detective Jones that PETEN became aggressive and began ramming his vehicle into her vehicle. Shipp advised that she observed PETEN shooting a handgun into her vehicle. Shipp also informed Detective Jones that PETEN was a drug dealer. Shipp said she has seen several drugs inside the trunk of PETEN's vehicle.

15.        On January 28, 2019, at 1638 hours, ATF Task Force Officer (TFO) Antonio Goins executed an Alabama state vehicle search warrant at 636 Howe Street, Montgomery, AL 36104, on the red Dodge Challenger that had been found wrecked at Coral Lane and Rainbow Road. The vehicle's Alabama tag was 3BD4524. The following items were recovered during the search of this vehicle: one (1) .380 caliber shell casing found on rear passenger floorboard; 2.5 grams of crack cocaine found on the driver's side floorboard; two (2) jump drives found in the front center console; one (1) green scale found on the rear passenger's seat with a white powdery substance; assorted documents found in the glove compartment and the passenger's seat back pocket; fold top sandwich bags found on the rear driver's side back seat; a bag of spoons, knives and forks found on the rear passenger's seat; one (1) black holster found on the front passenger's seat; two (2) cellphones were located in the center console inside of PETEN's vehicle, including this Device. One (1) cellphone found in the glove compartment; one (1) cellphone found in the front driver's side floorboard.

16.        The .380 caliber shell casing found in the vehicle search was same as firearm caliber found in the roadway by Montgomery Police Department.

5

17.         TFO Goins made a telephonic call to Maddox, Justin (w/m, dob:

07/08/1991), the registered owner of the Red Dodge Challenger searched by TFO Goins.

Maddox advised that he purchased the vehicle from Budget Car Sales on Atlanta Hwy. Maddox

advised that he bought the car for PETEN, Quintin because he had bad credit. Maddox stated that

PETEN was the primary driver of the vehicle. Maddox noted that PETEN made a down payment

and two payments for the vehicle. Maddox commented that he did not own a firearm and he did

not have one inside the vehicle. Maddox informed TFO Goins that he had only test driven the

vehicle on the day of purchase.

18.         PETEN has the following convictions:
- *Robbery 1st Degree Montgomery County, Alabama, Case number CC-2005-001313.00.*
- *Burglary 3rd Degree Montgomery County, Alabama, Case number CC-2005-000482.00.*
- *Robbery 1st Degree Montgomery County, Alabama, Case Number CC-2004-001253.00.*

19.         ATF Senior Special Agent Richie Carpenter was provided the description

of the firearm and ammunition recovered from the shooting and determined that the firearm and

ammunition was not manufactured in the State of Alabama and therefore must have traveled in

interstate commerce.

20.         In addition to the indicia of drug distribution found inside the vehicle, such

as the scale with suspected narcotics on it, plastic cutlery for cutting narcotics for distributions,

and sandwich baggies for packaging narcotics for distribution, several cell phones were found in

close proximity to the drugs. Based on my training and experience, I am aware that cellular

phones are commonly used as a tool to help facilitate drug transactions, and evidence of the same

is often captured on the device through its various functions, which are listed below.

Furthermore, through my training and experience, I know that those involved in the distribution

of illegal narcotics often carry multiple phones to facilitate their illegal activities, in order to decrease the likelihood that their activities will be linked to any particular number.

21.        I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state, as they were when the Device first came into the possession of ATF.

22.        The narcotics were tested by Drug Enforcement Administration and cocaine base confirmed in the composite.

## TECHNICAL TERMS

23.        Based on my training and experience, I use the following technical terms to convey the following meanings:

        a.        Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

        b.        Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

7

c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation.      The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.      Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross

8

state and international borders, even when the devices communicating with each other are in the same state.

24.        Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device, and how the Device was used.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.        Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. This information can sometimes be recovered with forensics tools.

26.        *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

> g.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
>
> h.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
>
> i.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

9

j.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

k.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.     *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Antonio Goins
Task Force Officer, ATF

10

Subscribed and sworn to before me
on March 18, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

11



**Photo 1**



**Photo 2**



**Photo 3**



**Photo 4**



**Photo 5**



**Photo 6**

6



**Photo 7**

## **ATTACHMENT A**

The property to be searched is a OF RED I- PHONE MODEL: A1661; IC 579C-E3087A, hereinafter the "Device." The Device is currently located in the Montgomery Field Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives Property Room under Barcode No. 2247967, Item No. 10.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

8

## **ATTACHMENT B**

All records and data on the Device described in Attachment A that relate to violations of felon in possession a firearm and ammunition that has travelled in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1); possession with the intent to distribute a Controlled Substance in violation of Title 21, United States Code, Section 841(a)(1); and possession of a firearm during a drug trafficking crime, in violation of Title 18, United States Code, Chapter 44, Section 924(c)(1) as described in the affidavit, and the identities of those involved in such violations, including: Evidence of user attribution showing who used or owned the Device during the planning or commission of any such violations;

a. Any data or information related to the identity of the person(s) who communicated with the user of the Device about matters relating to the commission of the above-referenced crimes;

b. Any data or information, including GPS data, GPS data establishing the user's connection to the commission of the above-referenced crimes;

c. Photographs evidencing the planning of, or individuals involved in, the commission of the above-referenced crimes;

d. Web searches related to the commission of the above-referenced crimes; and

e. The assigned number of the cellular phone, text messages, deleted text messages, recently dialed or received numbers, voice mail messages, telephone numbers, GPS information, e-mail messages (to include deleted emails), address book information (including deleted addresses/phone numbers), videos and photographs related to the above-referenced crimes.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.